**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 16, 2006[*]
Decided August 17, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 05-1149

| | |
|---|---|
| COURTNEY ARMSTEAD,<br>   *Plaintiff-Appellant,*<br><br>   v.<br><br>PAUL CLARK,<br>   *Defendant-Appellee.* | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division<br><br>No. TH 02-40-C-M/F<br><br>Larry J. McKinney,<br>*Chief Judge.* |

## O R D E R

Courtney Armstead, an inmate at Wabash Valley Correctional Center, sued Correctional Officer Paul Clark under 42 U.S.C. § 1983, claiming that Clark violated his First Amendment right to free speech by retaliating against him for filing a grievance. Following a bench trial, the district court entered judgment for Clark. Armstead appeals the court's final judgment as well as several underlying orders. We affirm.

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

The events surrounding this lawsuit are undisputed. On April 2, 2001, Armstead created a disturbance at the prison's "medical pass window." Officer Clark, who was assigned to patrol the area, approached Armstead, ordered him to return to his cell house, and filed a disciplinary report charging him with disorderly conduct. Armstead was found guilty and sanctioned. Armstead then filed a grievance against Clark, complaining that during their confrontation Clark had been "arrogant," "belligerent," and "disrespect[ful]." He also requested that Clark receive "sensitivity training." Several days later, Armstead filed a second grievance against Clark arising from the same event, stating: "Clearly this officer has a bad problem connecting or talking to prisoners. His poor unprofessional behavior, his attitude, will sooner or later make a prisoner strike back with aggression of his own if this officer isn't corrected at this stage." Clark received a copy of Armstead's second grievance on May 12 and immediately filed a disciplinary charge against him because, Clark reported, the grievance "contained a threatening statement." Following a hearing to determine whether Armstead made a threat against Clark, Armstead was found not guilty.

In February 2002, Armstead filed this *pro se* lawsuit, alleging that Officer Clark filed the May 12 conduct report in retaliation for the grievances he filed. According to Armstead, the conduct report was "fabricated," as reflected by the conduct adjustment board's determination that he had not threatened Clark. And, he claimed, Clark had no authority to file the conduct report because only a grievance specialist could report a prisoner for filing a grievance that included a threat. Because the grievance specialist who reviewed his grievance did not file a conduct report, Armstead reasoned, Clark took it upon himself to file the report in retaliation for Armstead's complaining about him.

During the litigation Armstead filed several motions, which the district court denied. In October 2003 Armstead moved to amend his complaint to add a certain "Official Brown" as a defendant, alleging that Brown conspired with Clark to "cover-up [Clark's] retaliatory disciplinary infraction." The district court denied the motion, reasoning that any amendment to the complaint would be futile because the two-year statute of limitations had run on Armstead's claim. Armstead also requested appointment of counsel on two separate occasions. In rejecting Armstead's requests, the district court observed that Armstead had not attempted to recruit counsel himself and that "[t]he plaintiff has proceeded with vigor in this action, and in doing so he has consistently shown his familiarity with the factual basis of his claim, with the law applicable to the claim, and with the court's process." The district court subsequently denied Armstead's motion for summary judgment as well as Clark's cross-motion, explaining that a disputed issue of fact existed concerning Clark's motivation for filing the May 12 conduct report.

The case proceeded to trial. Officer Clark, testifying as Armstead's witness, denied acting with retaliatory intent when he filed the May 12 conduct report. He admitted receiving a copy of Armstead's grievance and writing a conduct report "stemming from the grievance." But, he explained, he construed the language in the grievance—"his poor unprofessional behavior, his attitude, will sooner or later make a prisoner strike back with aggressions of his own"—as a threat. He testified that he believed he had authority to initiate a conduct report because any threat against a staff member violated the prison's Disciplinary Code. Armstead disagreed and pointed to a provision in the prison's grievance policy that he claimed authorized only grievance specialists to file conduct reports arising from threats contained in grievances: "[a]ny offender found to have filed a complaint/grievance that contains a threat towards staff . . . shall have a conduct report filed by the grievance specialist for that threat." But the grievance specialist who reviewed Armstead's grievance testified that, even though the grievance policy mandated that he file a conduct report if he independently believed Armstead's grievance contained a threat (and he did not), nothing prohibited Clark himself from filing a conduct report if he believed the grievance contained a threat. The prison's superintendent of programs confirmed that any prison official may initiate a conduct report whenever an inmate threatens staff.

The district court entered judgment for Clark, setting forth three factors it considered critical to its decision. First, the court found that Clark had authority to file the May 12 conduct report. Second, the court determined that Armstead failed to establish by a preponderance of the evidence that his filing a grievance, rather than his making a threat, was the substantial or motivating factor for Clark's filing the conduct report. Third, the court found that Armstead failed to establish that he suffered anything more than "subsequent adverse administrative action" as a result of Clark's action.

On appeal Armstead challenges the district court's determination that Clark did not act with a retaliatory motive when he filed the May 12 conduct report. He argues that Clark's actions were retaliatory because his "grievance was used as the only basis of [Clark's] disciplinary report." And because the conduct adjustment board cleared him of making a threat in his grievance, Armstead claims, Clark's conduct report was necessarily false.

To succeed on his retaliation claim, Armstead was required to prove that Clark filed the May 12 conduct report to punish him for filing a grievance. *See Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Otherwise permissible actions by prison officials can become impermissible if done with a retaliatory motive. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). But the prisoner bears the burden of proving that his protected conduct was a motivating factor for the retaliation and that events would have transpired differently absent the retaliatory

motive. *Babcock*, 102 F.3d at 275. Whether a defendant acted in retaliation is a question of fact, *Ustrak v. Fairman*, 781 F.2d 573, 578 (7th Cir. 1986), that we review for clear error, *Levenstein v. Salafsky*, 414 F.3d 767, 773 (7th Cir. 2005).

The district court's finding that Armstead failed to establish Clark's retaliatory motive is not clearly erroneous. Armstead insists that the conduct adjustment board's determination that his grievance did not contain a threat proves that Clark retaliated against him, but that determination is only some evidence that Clark's motive may have been retaliatory. *See Hale v. Scott,* 371 F.3d 917, 920 (7th Cir. 2004) ("[i]f the prisoner can show that he did not violate the regulation, then he may have" a retaliation claim). And Armstead presented little else but his own conjecture in support of his claim. Although an inmate has a constitutional right to file a grievance, *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000), language that is otherwise punishable is not shielded from disciplinary action merely because it appears in a grievance, *Hale*, 371 F.3d at 919-20. On this record the district court could have concluded that Clark filed the grievance because he believed Armstead violated prison policy. *See Anderson v. City of Bessemer*, 470 U.S. 564, 573-74 (1985) (instructing that when reviewing for clear error appellate courts must affirm "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety").

We also find no fault with district court's decisions to deny Armstead's underlying motions. District courts may deny a motion to amend a complaint where the proposed amendment is barred by the statute of limitations. *Rodriguez v. United States*, 286 F.3d 972, 980 (7th Cir. 2002). Armstead's request to add his claim against Official Brown came more than two and a half years after these events and therefore fell outside Indiana's two-year statute of limitations for personal injury claims. *See Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997). District courts must also deny a motion to appoint counsel where plaintiff made no attempt to secure counsel of his own, *Jackson v. County of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992), and the record reveals that Armstead did not attempt to retain counsel before asking the court to appoint counsel. Finally, we will not address the district court's denial of Armstead's motion for summary judgment because this case already proceeded to a trial on the merits and our focus now is on the evidence that emerged from that trial. *See Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 718-19 (7th Cir. 2003).

AFFIRMED.